**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Anthony Leo Braileanu,<br>Plaintiff,<br>v.<br>Arizona Board of Regents, et al.,<br>Defendants. | No. CV-26-00470-TUC-JCH<br>**ORDER** |

Plaintiff Anthony Leo Braileanu filed a Complaint (Doc. 1) asserting claims arising from his dismissal from the University of Arizona College of Medicine and the University's handling of disability- and sex-related complaints. Plaintiff also filed an Application for Leave to Proceed *In Forma Pauperis* (the "IFP Application") (Doc. 2). The Court first addresses Plaintiff's ability to proceed *in forma pauperis* and then screens the Complaint.

## I. Application to Proceed *In Forma Pauperis*

Under 28 U.S.C. § 1915(a)(1), a court may authorize a person to commence an action without prepaying the filing fee upon an adequate showing of indigency. An applicant need not be "absolutely destitute," but must show that he cannot pay the filing fee and still afford the necessities of life. *Escobedo v. Applebees*, 787 F.3d 1226, 1234–35 (9th Cir. 2015). The applicant must establish his poverty "with some particularity, definiteness and certainty." *United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981). A court may make a factual inquiry when the information supplied does not permit it to determine whether the applicant is unable to pay. *Id.*

Plaintiff's application does not provide the Court enough information to make that determination. Plaintiff reports no employment income, self-employment income, gifts, public assistance, retirement benefits, disability benefits, unemployment benefits, or other income. Doc. 2 at 1–2. He also reports having no cash and no funds in any bank or financial account. *Id.* at 2. He identifies one asset—a 2001 Chevrolet Silverado valued at $2,000—and reports no outstanding debts. *Id.* at 3. Yet Plaintiff reports monthly expenses of $300 for food and $20 for transportation. *Id.* at 4. He reports no rent, utilities, insurance, medical expenses, or other recurring expenses. *Id.*

Plaintiff additionally explains that, since returning to California after his dismissal from medical school, he has been his mother's "24/7 medical caregiver." *Id.* at 5. But he does not state whether he receives compensation for that work, whether his mother or another person provides him financial or in-kind support, or who pays for his housing and other necessities.

The Court finds at this stage that the information provided is incomplete and does not establish Plaintiff's inability to pay with the particularity and certainty required by § 1915. *See McQuade*, 647 F.2d at 940. The IFP Application will be denied without prejudice. Plaintiff will be given 30 days either to pay the $405 filing and administrative fees or submit a renewed IFP application. Any renewed application must fully identify the source of the funds or in-kind support used to pay Plaintiff's monthly expenses and basic necessities, including housing, food, utilities, and transportation; whether Plaintiff receives any compensation for caregiving; and any money, benefits, or support actually made available to Plaintiff by another person.

## II. Statutory Screening of *Pro Se* Complaint

### A. Legal Standard

The Court must screen *in forma pauperis* complaints under § 1915(e)(2) and dismiss a case if the Court determines the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A pleading must contain a "short and plain statement of the claim *showing* that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Instead, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 566 at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Still, the Court must "construe pro se filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). If the Court determines a complaint could be cured by the allegation of additional facts, a *pro se* litigant is entitled to an opportunity to amend that complaint before dismissal of the action. *See Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc).

**B. Complaint**

Plaintiff entered the University of Arizona College of Medicine–Tucson M.D. program in 2020. Doc. 1 at 1. He alleges he has ADHD, generalized anxiety disorder, and major depressive disorder, and that those conditions substantially affected his concentration, learning, testing, and ability to process information under stress. *Id.* at 3. After academic difficulties in multiple clerkships and examinations, Plaintiff was dismissed from the College effective September 12, 2024. *Id.* at 10. The Complaint alleges that the University failed to adequately consider reasonable disability-related modifications during the academic and dismissal-review processes, retaliated against Plaintiff for seeking disability-related relief, denied him constitutionally adequate process, and later treated his complaints of sex-based mistreatment differently because he is male. *Id.* at 16–21.

Plaintiff asserts six claims: (I) disability discrimination under Title II of the Americans with Disabilities Act ("ADA"); (II) disability discrimination under § 504 of the Rehabilitation Act; (III) disability retaliation; (IV) procedural due process under 42 U.S.C. § 1983; (V) intentional sex discrimination under Title IX; and (VI) Title IX deliberate indifference. *Id.* at 16–21.

The Complaint does not assert each count against every Defendant. Counts I and III are asserted against Arizona Board of Regents ("ABOR"), with prospective relief also sought against Dean Michael M.I. Abecassis in his official capacity. *Id.* at 16–18. Count II is asserted against ABOR. *Id.* at 17. Count IV is asserted against Associate Dean Raquel Hernandez Givens, Vice Dean Kevin F. Moynahan, Dean Abecassis, and Office of Institutional Equity ("OIE") civil rights investigator Geoff Woodward in their individual capacities, with prospective relief also sought against Dean Abecassis in his official capacity. *Id.* at 18–19. Counts V and VI are asserted against ABOR. *Id.* at 20–21.

**C. Statute of Limitations**

The Complaint was filed on September 14, 2026. Plaintiff alleges his academic dismissal became final on September 12, 2024. Arizona's two-year personal-injury limitations period generally governs Plaintiff's § 1983 and Title IX claims and applies to the Title II and § 504 claims asserted here. *See Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006); *Oskowis v. Sedona Oak-Creek Unified Sch. Dist. #9*, No. CV-16-08063-PCT-JJT, 2017 WL 1135558, at *4–5 (D. Ariz. Mar. 27, 2017).

September 12, 2026, fell on a Saturday. Under Federal Rule of Civil Procedure 6(a)(1)(C), a limitations period ending on a Saturday continues through the next day that is not a Saturday, Sunday, or legal holiday. *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002). The Ninth Circuit recently reaffirmed that rule. *Edwards v. Brown*, No. 25-6849, 2026 WL 2903706, at *5–7 (9th Cir. Sept. 28, 2026). Accordingly, claims accruing upon the final September 12, 2024, dismissal are not facially time-barred.

Also, the Complaint also alleges relevant Title IX conduct occurring in 2025. Doc. 1 at 13–15. The Court cannot conclude from the face of the Complaint that Plaintiff's claims as pleaded are time-barred.

### D. Claims

#### 1. Counts I and II: ADA and Rehabilitation Act

Title II prohibits a public entity from excluding a qualified individual with a disability from its services, programs, or activities by reason of the individual's disability. 42 U.S.C. § 12132. Section 504 similarly prohibits disability discrimination in a program or activity receiving federal financial assistance. 29 U.S.C. § 794(a). To state a claim under either the ADA or Rehabilitation Act, Plaintiff must show that he (1) is disabled under either Act; (2) is otherwise qualified to remain a student at the medical school, i.e., he can meet the essential eligibility requirements of the school, with or without reasonable accommodation; (3) was dismissed solely because of his disability; and (4) the medical school receives federal financial assistance (for the Rehabilitation Act claim), or is a public entity (for the ADA claim). *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1046 (9th Cir. 1999) (quotations omitted).

In the higher-education context, a student must be able to satisfy the institution's essential eligibility requirements with or without a reasonable accommodation. *Id.* at 1045–47. Reasonableness is determined on a case-by-case basis and depends on the individual student's particular circumstances. *See id.* at 1050. Once the reasonableness element is shown, the burden shifts to the defendant to show that the requested accommodation would require a "fundamental or substantial modification of its program or standards." *Id.* at 1047. Because institutions are not required to make substantial modifications, or ones that will result in a fundamental alteration of a program, this showing will defeat a failure to accommodate claim. *See id.* at 1049; *Wong v. Regents of Univ. of Cal.*, 192 F.3d 807, 817–18 (9th Cir. 1999).

Plaintiff brings Count I against ABOR and seeks prospective relief against Dean Abecassis in his official capacity. Doc. 1 at 16–17. He brings Count II against ABOR. *Id.* at 17. Plaintiff alleges diagnosed mental-health conditions affecting several major life activities. *Id.* at 3. He further alleges that the University ultimately approved additional examination time, that medical professionals supported his ability to continue under modified conditions, and that he sought an accommodated reassessment, treatment-related

leave, reduced coursework, remediation, or another standards-preserving opportunity to demonstrate competency. *Id.* at 5, 8, 10, 16–17. He alleges ABOR nevertheless finalized his dismissal without adequately determining whether those modifications would permit him to satisfy the College's essential requirements. *Id.* at 10, 16–17.

At this stage, the Court cannot determine whether Plaintiff was qualified, the requested modifications were reasonable, or any modification would fundamentally alter the College's academic program. A recent District of Arizona decision addressing similar disability claims against ABOR also declined to resolve those matters during § 1915 screening without the benefit of ABOR's position. *See Sarumi v. Ariz. Bd. of Regents*, No. CV-26-05379-PHX-JAT, 2026 WL 2279438 (D. Ariz. Aug. 7, 2026). Counts I and II therefore sufficiently state claims for purposes of initial screening.

**2. Count III: Disability Retaliation**

To state a claim for ADA retaliation, a plaintiff must plausibly allege that he (1) engaged in protected activity, (2) suffered an adverse action, and (3) that a causal relationship exists between the two. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 849–50 (9th Cir. 2004). Requesting disability accommodations and complaining of disability discrimination constitute protected activities, and temporal proximity may support an inference of causation at the pleading stage. *See id.* at 850 (holding that pursuing ADA rights is protected activity and that close temporal proximity between protected activity and adverse action may support an inference of causation); *Coons v. Sec'y of U.S. of Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (holding that requesting reasonable accommodation is protected activity).

Plaintiff brings Count III against ABOR and seeks prospective relief against Dean Abecassis in his official capacity. Doc. 1 at 17–18. Plaintiff alleges that he requested disability-related accommodations, raised disability discrimination during his dismissal appeals, submitted psychiatric documentation, and filed a disability-related complaint with the OIE. *Id.* at 7–10, 17–18. He further alleges that University officials knew of those activities, excluded disability-related evidence from his Surgery clerkship from the dismissal review, and ultimately finalized his dismissal. *Id.* at 18. Whether the dismissal

instead resulted entirely from preexisting academic deficiencies is a factual question not appropriately resolved on this *ex parte* screening record.

Count III sufficiently states a retaliation claim for purposes of screening. *See Sarumi*, 2026 WL 2279438, at *2–5 (allowing an ADA/Rehabilitation Act retaliation claim against ABOR to survive screening based on allegations that adverse academic decisions followed accommodation requests).

**3. Count IV: Procedural Due Process**

The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process. "A section 1983 claim based upon procedural due process thus has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Property interests do not arise from the Constitution itself but instead from an independent source, such as state law or an enforceable contractual entitlement. *Id.*; *Bd. Of Regents of State Colls. v. Roth*, 408 U.S. 564, 569, 577 (1972).

Plaintiff brings Count IV against Associate Dean Givens, Vice Dean Moynahan, Dean Abecassis, and OIE civil rights investigator Woodward in their individual capacities and seeks prospective relief against Dean Abecassis in his official capacity. Doc. 1 at 18–19. Plaintiff alleges that Givens urged the Student Appeals Committee to disregard disability-related, Surgery-clerkship evidence and rejected his challenge to the Surgery grade-appeal process; Moynahan adopted the Student Appeals Committee's recommendation and upheld his dismissal; Woodward reviewed Plaintiff's OIE disability complaint, rejected his disability-related theories, and advised that the dismissal review could resume; and Abecassis denied Plaintiff's final appeal after the OIE review. *Id.* at 7–10, 18–19.

The Complaint alleges that Plaintiff possessed a property interest in continued enrollment based on his "enrolled status and the University's substantive conditions governing dismissal." Doc. 1 at 18–19. But Plaintiff does not identify an Arizona statute, regulation, contractual provision, or other source giving him a legitimate entitlement to

continued enrollment in the College of Medicine. In *Schwake v. Arizona Board of Regents*, the Ninth Circuit affirmed dismissal of an Arizona university student's procedural-due-process claim because the student failed to identify any basis under Arizona law establishing a property interest in his education and did not allege a contract entitling him to the particular educational right allegedly taken. 821 F. App'x 768, 770–71 (9th Cir. 2020) (mem.).

The Complaint also concerns an academic dismissal. Doc. 1 at 6–10. Even assuming a protected interest exists, an academic dismissal does not require the procedures associated with a disciplinary hearing. Due process is satisfied where the student is informed of the faculty's dissatisfaction and the ultimate academic decision is "careful and deliberate." *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85–91 (1978). Plaintiff's own allegations describe notice of his academic deficiencies, an appearance before the Student Progress Committee, a written dismissal appeal, review by the Student Appeals Committee, further review by the Dean, and an OIE assessment before the final dismissal. Doc. 1 at 6–10. Although Plaintiff alleges defects in those proceedings and disagreement with what evidence the University considered, the Complaint does not presently identify a protected property interest or explain how those alleged defects deprived him of the minimum process constitutionally required for an academic dismissal.

Thus, Count IV fails to state a claim. Because Plaintiff might be able to identify an independent source creating a protected entitlement and allege clearer facts establishing constitutionally inadequate process, Count IV will be dismissed without prejudice and with leave to amend.

**4. Count V: Title IX Sex Discrimination**

Title IX prohibits a federally funded educational institution from subjecting a person to discrimination on the basis of sex. 20 U.S.C. § 1681(a). At the pleading stage, the question is whether the alleged facts permit a plausible inference of sex discrimination; a plaintiff need not establish that sex discrimination is the only or even the most likely explanation for the institution's actions. *Schwake v. Ariz. Bd. of Regents*, 967 F.3d 940, 947–48 (9th Cir. 2020).

Plaintiff brings Count V against ABOR. Doc. 1 at 20. Plaintiff alleges that sex-related accusations concerning him began after he accidentally sent an explicit video to another student—Dilara Long—in December 2020 and later expanded into allegations that he was a sexual aggressor. *Id.* at 11–13. In April 2025, several months after Plaintiff's September 2024 dismissal, Long allegedly circulated renewed accusations concerning Plaintiff to medical-student listservs and University leadership. *Id.* at 13. Plaintiff thereafter asked University officials to investigate the accusations, determine whether he had received notice and an opportunity to respond, address alleged reputational harm, and clarify his record. *Id.* at 14–15. He alleges the University did not provide the substantive response he requested. *Id.*

These allegations do not presently state a Title IX discrimination claim. By the time of the alleged 2025 conduct, Plaintiff was no longer enrolled in the College of Medicine. Although Plaintiff alleges that he expressed a desire to return to medical school, he does not allege that he had been readmitted, that he applied for readmission and was denied, or that ABOR denied him a particular educational benefit or opportunity because of his sex. Instead, the Complaint alleges that Plaintiff complained about accusations made against him after he was no longer active in the program, and the University did not investigate or resolve those complaints in the manner he requested. *Id.* at 11–15. 20. A failure to provide a requested investigation or response, without facts connecting that failure to a sex-based denial of educational access or benefits, does not itself plausibly allege intentional sex discrimination under Title IX.

Plaintiff also relies on the University's alleged interactions with female students and its handling of earlier sex-related complaints. *Id.* at 11–15. But the Complaint does not adequately connect those circumstances to a particular adverse educational action taken against Plaintiff because he is male. Indeed, Plaintiff alleges that the 2024 academic dismissal itself was not based on sex discrimination. *Id.* at 15. The Complaint leaves unclear what discriminatory educational decision forms the basis of Count V.

Thus, Count V fails to state a claim. Because Plaintiff may be able to allege additional facts identifying a specific educational benefit, opportunity, or decision that

ABOR denied him because of his sex, Count V will be dismissed without prejudice and with leave to amend.

**5. Count VI: Title IX Deliberate Indifference**

To recover damages from an educational institution for student-on-student sexual harassment, a plaintiff must establish that: (1) the educational institution had substantial control over both the harasser and the context in which the known harassment occurs; (2) that the harassment was so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect; (3) a school official with authority to address the alleged discrimination and to institute corrective measures had actual knowledge of the discrimination; (4) the school acted with deliberate indifference to the harassment; and (5) the school's deliberate indifference must, at a minimum, cause students to undergo harassment, or make them liable or vulnerable to it. *Brown v. State of Ariz.*, 82 F.4th 863, 874 (9th Cir. 2023) (en banc).

Plaintiff brings Count VI against ABOR. Doc. 1 at 21. He alleges that peer accusations and exclusion during his enrollment impaired his participation in medical school and that, after his dismissal, Long circulated renewed allegations about him in April 2025. *Id.* at 11–15, 21. He further alleges that University officials knew of the renewed allegations but did not provide the investigation or substantive response he requested. *Id.* at 14–15, 21.

The Complaint does not plausibly allege the required denial of educational access resulting from ABOR's deliberate indifference. Plaintiff had already been dismissed from the College of Medicine in September 2024, months before the principal conduct underlying his 2025 complaints. He does not allege that he was enrolled in a University program in 2025, had been readmitted, or was participating in an educational program from which the alleged harassment excluded him. Although Plaintiff alleges that the accusations burdened his efforts to return to medical school, he does not allege that he submitted an application for readmission or that ABOR denied him readmission or another educational opportunity because of the alleged harassment.

Nor does the Complaint adequately allege that ABOR's response caused Plaintiff to

undergo additional harassment or made him vulnerable to it. The allegations principally establish that Plaintiff reported the 2025 communications as a former student and that University officials did not investigate or resolve his complaints in the manner he requested. This does not establish the causation and denial-of-access requirements for a deliberate-indifference claim. *See Brown*, 82 F.4th at 874.

Thus, Count VI fails to state a claim. Because Plaintiff may be able to allege additional facts establishing that ABOR's deliberate indifference subjected him to further harassment or deprived him of access to a specific educational opportunity or benefit, Count VI will be dismissed without prejudice and with leave to amend.

**III. Leave to Amend**

Because Plaintiff is self-represented, he will be permitted to cure Counts IV, V, and VI by submitting an amended complaint. *See Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc). The First Amended Complaint ("FAC") must be retyped or rewritten in its entirety, and no part of the original Complaint may be incorporated by reference. *See* LRCiv 15.1. Any cause of action raised in the original Complaint is waived if not alleged in the FAC. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

If Plaintiff elects to amend Count IV, he must identify the independent source of the claimed protected property or liberty interest and allege facts explaining why the procedures he actually received failed to satisfy the constitutional requirements governing an academic dismissal. Plaintiff should not rely merely on an alleged failure to comply with an internal University procedure because a violation of an institutional rule does not, without more, establish a federal due-process violation.

If Plaintiff elects to amend Count V, he must identify the particular educational benefit, opportunity, or decision that he contends ABOR denied him because of his sex and allege facts supporting a plausible inference that sex was the reason for that treatment. Merely alleging that the University failed to investigate or respond to his complaints in the manner he requested as a former student is insufficient.

If Plaintiff elects to amend Count VI, he must allege facts showing how ABOR's deliberate indifference to known harassment caused him to undergo further harassment or

made him vulnerable to it and how that harassment deprived him of access to a specific educational opportunity or benefit. If Plaintiff relies on events occurring after his September 2024 dismissal, he must explain what educational program, benefit, or opportunity he was participating in or seeking and how ABOR's response to the alleged harassment affected his access to it.

## IV. Warnings

Plaintiff must file and serve a notice of a change of address in accordance with LRCiv. 83.3(d). Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

## V. Order

Accordingly,

**IT IS ORDERED** that Plaintiff's Application for Leave to Proceed *In Forma Pauperis* (Doc. 2) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that, within 30 days of the date of this Order, Plaintiff must either pay the $405 filing and administrative fees or file a renewed IFP application that cures the deficiencies identified above. If Plaintiff files a renewed application, he must explain the source of the funds or in-kind support used to meet his monthly expenses and necessities despite reporting no income, cash, bank accounts, gifts, or public assistance.

**IT IS FURTHER ORDERED** that Counts I, II, and III sufficiently state claims for purposes of initial screening and may proceed against ABOR. Plaintiff's requests for prospective relief under Counts I and III may also proceed against Defendant Abecassis in his official capacity. This determination is without prejudice to Defendants raising any available defense or moving to dismiss after service.

///

**IT IS FURTHER ORDERED** that Counts IV, V, and VI are **DISMISSED WITHOUT PREJUDICE** for failure to state a claim. Plaintiff may file a FAC curing the deficiencies identified in this Order within 30 days. Any amended complaint must be complete in itself and must re-allege any claims Plaintiff wishes to preserve.

**IT IS FURTHER ORDERED** that no summons shall issue and service shall not proceed unless and until Plaintiff timely pays the filing fee or establishes his entitlement to proceed *in forma pauperis*.

**IT IS FINALLY ORDERED** that if Plaintiff neither pays the filing fee nor submits a sufficient renewed IFP application within 30 days, the Clerk of Court shall, without further notice, enter judgment dismissing this action without prejudice.

Dated this 7th day of October, 2026.

John C. Hinderaker
United States District Judge